IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs October 2, 2018

### STATE OF TENNESSEE v. AUDREY DOWNS

**Appeal from the Criminal Court for Shelby County**
**Nos. P-40061, P-17849      Paula L. Skahan, Judge**

_____

### No. W2018-00391-CCA-R3-CD

_____

The Appellant, Audrey Downs, appeals the Shelby County Criminal Court's summary dismissal of his petition requesting DNA analysis of evidence pursuant to the Post-Conviction DNA Analysis Act of 2001. Based upon the record and the parties' briefs, the judgment of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed, Case Remanded

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ALAN E. GLENN, J., joined.

Jessica Gillentine, Bartlett, Tennessee, for the appellant, Audrey Downs.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Amy P. Weirich, District Attorney General; and Pam Stark, Assistant District Attorney General, for the appellee, State of Tennessee.

Michael Pellegrin, Gallatin, Tennessee, and Jane Pucher and Adnan Sultan, New York City, New York, for the amicus curiae, The Innocence Project.

### OPINION

### I.  Factual Background

The record reflects that on February 28, 1995, the police discovered the nude body of thirty-two-year-old Penny Maness in some woods behind the "'Frayser Jaycee's'" building in Memphis. She had been strangled to death, and a wire had been twisted

around her neck. The medical examiner concluded that the wire had been placed around her neck after her death.

The Appellant was the last known person seen with the victim alive. The police arrested him, and he eventually confessed to raping and strangling her when she refused his sexual advances. He also revealed details of the crime that were consistent with the crime scene evidence, including that he placed the wire around her neck after he strangled her in order to disguise the crimes, and described leaving her body in the exact location and position as the police discovered it.

The State filed a notice to seek the death penalty. On January 16, 1996, the Appellant entered an Alford plea to first degree felony murder and aggravated rape and received concurrent sentences of life without parole and twenty-five years, respectively. In December 1996, he filed a petition for post-conviction relief, claiming that his guilty plea to first degree felony murder was the unknowing and involuntary result of his receiving the ineffective assistance of counsel. Audrey E. Downs v. State, No. 02C01-9710-CR-00390, 1998 WL 742379, at *1 (Tenn. Crim. App. at Jackson, Oct. 23, 1998) (order). This court affirmed the trial court's denial of the petition. Id.

In 2002, the Appellant filed a petition for post-conviction DNA analysis. The trial court granted the petition and ordered that semen in a condom found at the crime scene be tested and compared to the Appellant's DNA. The analysis revealed that the semen did not come from the Appellant. In 2004, the Appellant filed a motion to reopen his petition for post-conviction relief, claiming that he would not have pled guilty if he had known about the condom and the "exculpatory" DNA. During a hearing on the motion, a police officer testified that the victim's body was found in "kind of a lover's lane" and acknowledged that the condom was almost two hundred feet from the victim. At the conclusion of the hearing, the State argued that the evidence against the Appellant was "overwhelming" and that the condom was not exculpatory. The trial court agreed with the State that nothing indicated the condom was related to the crimes and denied the motion to reopen the post-conviction petition. Subsequently, the Appellant filed a second motion to reopen his petition for post-conviction relief and a petition for a writ of error coram nobis. Both were denied by the trial court.

In 2015, the Appellant filed a pro se motion requesting (1) that the DNA recovered from the condom "be checked against the DNA discovered from the backlog of rape kits being tested" because it would show that a rapist was in the location of the victim and that the rapist was not the Appellant and (2) that the DNA from the condom be compared to the victim's DNA because if the DNA from the condom matched the victim, "then it is the condom used by the person that assailed the decedent and would hence show that the petitioner is actually innocent of the charges." The State did not respond to the motion,

and the trial court summarily denied the motion on February 1, 2018. The Appellant contests the ruling of the trial court. Moreover, Amicus Curiae filed a brief, arguing that additional testing on the condom and other items from the crime scene would conclusively resolve the question of the Appellant's innocence.

## II. Analysis

As he did in 2002, the Appellant is requesting DNA analysis of evidence pursuant to the Post-Conviction DNA Analysis Act of 2001. The Act provides that

> a person convicted of and sentenced for the commission of first degree murder, second degree murder, aggravated rape, rape, aggravated sexual battery or rape of a child, the attempted commission of any of these offenses, any lesser included offense of these offenses, or, at the direction of the trial judge, any other offense, may at any time, file a petition requesting the forensic DNA analysis of any evidence that is in the possession or control of the prosecution, law enforcement, laboratory, or court, and that is related to the investigation or prosecution that resulted in the judgment of conviction and that may contain biological evidence.

Tenn. Code Ann. § 40-30-303. A post-conviction court is obligated to order DNA analysis when a petitioner has met each of the following four requirements:

> (1) A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis;
>
> (2) The evidence is still in existence and in such a condition that DNA analysis may be conducted;
>
> (3) The evidence was never previously subjected to DNA analysis or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and
>
> (4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

Tenn. Code Ann. § 40-30-304. Additionally, if DNA analysis would have produced a more favorable verdict or sentence if the results had been available at the proceedings leading up to the conviction or sentence, then the post-conviction court may order DNA analysis when the petitioner meets the requirements of Tennessee Code Annotated section 40-30-305. See Griffin v. State, 182 S.W.3d 795, 798 (Tenn. 2006).

The Act does not require that the post-conviction court hold a hearing on the matter. Dennis R. Gilliland v. State, No. M2007-00455-CCA-R3-PC, 2008 WL 624931, at *3 (Tenn. Crim. App. at Nashville, Mar. 3, 2008). Notably, if the State contests any of the qualifying requirements of the Act, and it is apparent the petitioner cannot establish each requirement, the post-conviction court may summarily dismiss the petition. Charles E. Jones v. State, No. W2014-02306-CCA-R3-PC, 2015 WL 3882813, at *3 (Tenn. Crim. App. at Jackson, June 24, 2015). In other words, the petitioner's failure to establish any single requirement may result in a dismissal of the petition. Id. "The post-conviction court is afforded considerable discretion in determining whether to grant a petitioner relief under the Act, and the scope of appellate review is limited." Sedley Alley v. State, No. W2004-01204-CCA-R3-PD, 2004 WL 1196095, at *3 (Tenn. Crim. App. at Jackson, May 26, 2004). On appeal, this court will not reverse the post-conviction court's judgment unless it is not supported by substantial evidence. Id.

Turning to the instant case, the State acknowledges that the trial court did not address any of the four requirements of the Act but argues that the court properly denied the Appellant's motion because the results of additional testing are irrelevant in light of his confession to raping and murdering the victim, the availability of the victim's DNA is unknown, the Appellant could have requested the testing in his 2002 petition, and "it is not clear that he is not seeking simply to avoid the consequences of his actions by any unreasonable means available." However, the trial court should have addressed the four requirements. See Ricky Nelson v. State, No. W2010-02088-CCA-R3-PC, 2011 WL 6349720, at *4 (Tenn. Crim. App. at Jackson, Dec. 14, 2011) (concluding that because the trial court failed to address the first requirement in its order, this court was unable to conduct appropriate appellate review). Therefore, we reverse the judgment of the trial court and remand this case in order for the court to make findings of fact pursuant to the Act.

## III. Conclusion

Based upon the record and the parties' briefs, the judgment of the trial court is reversed. The case is remanded to the trial court for further proceedings consistent with this opinion.

_____
NORMA MCGEE OGLE, JUDGE